**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

LIZBETH FLOR ANGEL CAMAC HUANCA,

Petitioner,

v. Case No. 2:26-cv-03380 KWR-JFR

WARDEN, *Otero County Processing Center*,
MARY DE ANDA-YBARRA, *Field Office Director, El Paso, U.S. Immigration and Customs Enforcement,*
ACTING DIRECTOR,
*Immigration and Customs Enforcement,*
TODD BLANCHE, *U.S. Attorney General, and*
MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*,

Respondents.

**ORDER DENYING HABEAS PETITION**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus. Petitioner is a non-citizen who is detained by ICE. Although she received a bond hearing, bond was denied. She challenges the bond denial decision and asserts that her bond hearings or bond decision violated her due process rights. As explained below, Petitioner's Petition is not well-taken and therefore is **DENIED**.

**BACKGROUND**

Petitioner is a citizen of Peru and is currently detained by ICE at the Otero County Processing Center. Petitioner entered the United States in January 2023 without inspection. Shortly after her entry, DHS arrested and detained her through a warrant issued under 8 U.S.C. § 1226(a). Doc. 1 at 2. She was subsequently released on her own recognizance under § 1226(a). *Id.*

On May 10, 2023, an immigration judge dismissed her removal proceedings for failure to prosecute. *Id.* at 3.

Petitioner has resided in Maryland with her family since her release. She asserts she has no criminal history, has complied with all check-in requirements under the ATD program, and has kept her address up to date with ICE.

On November 6, 2025, Petitioner was arrested by ICE at a check-in pursuant to a warrant issued under § 1226. *Id.* at 3. A new Notice to Appear was issued and removal proceedings commenced again. *Id.*

On November 14, 2025, a bond hearing was held before an immigration judge. The immigration judge found that she was mandatorily detained. In the alternative, the immigration judge found that she was a flight risk. Petitioner asserts that the immigration judge's flight risk determination was flawed because it was based on incorrect statements in the Government's Form I-213. Doc. 1 at 4.

This is Petitioner's second habeas petition. The Court granted in part her first habeas petition and ordered a bond hearing. Another bond hearing was held on February 11, 2026 and bond was denied.

Petitioner asserts that the Government's initial Form I-213 was flawed because it alleged that she missed eight immigration check-ins. She asserts this was incorrect. The Government withdrew and corrected its I-213 form on August 6, 2026. The new Form I-213 removed any reference to missed appointments or failures to cooperate with ICE. Doc. 1 at 6.

Another bond hearing was held on August 12, 2026, at which the immigration judge acknowledged the corrected Form I-213. Nevertheless, after considering the evidence submitted

by the parties and counsel's proffer, the immigration judge denied bond, concluding that Petitioner was a flight risk due to her manner of entry and order of removal. *See, e.g.* Doc. 5-1 at 1.

Petitioner asserts procedural and substantive due process violations challenging the bond hearing and decision. Petitioner asserts that she was detained for eleven months based on false allegations contained in a prior Form I-213 which stated that she had missed multiple check-in appointments. Petitioner asserts that she did not miss any appointments. Moreover, she appears to assert that her latest bond hearing, although correcting these errors, still violated due process.

## DISCUSSION

### I. Petitioner failed to identify an error in the August 2026 bond hearing amounting to a due process violation.

Petitioner asserts that her bond hearing and bond determination violated her procedural due process rights due to various errors.

Initially, to the extent Petitioner challenges the flight risk determination, the Court lacks authority to review that decision. Generally, the Court lacks jurisdiction to review a discretionary determination by an immigration judge in a bond decision. The release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018). Discretionary bond decisions, such as the determination that a noncitizen is a flight risk, are generally not reviewable by a federal district court. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012)

("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…"). Here, the immigration judge denied bond, reasoning that she is a flight risk. The Court lacks authority to review the immigration judge's discretionary determination.

However, the Court has discretion to review constitutional violations. For example, a noncitizen is entitled at least to fundamental fairness at a bond hearing. "An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

Here, Petitioner appears to assert that the immigration judge's bond decision or hearing violates her procedural due process rights because it was riddled with errors. Although Petitioner points to various prior bond hearings, at issue here is the latest bond hearing in August 2026, which as explained below, rectified various alleged errors.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context

of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)). The Court assumes that Petitioner has a liberty interest in freedom from imprisonment and proceeds to whether Petitioner received adequate process.

In analyzing a procedural due process claim the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Petitioner received a bond hearing in this case in August 2026. Therefore, at issue here is whether her August 2026 bond hearing and decision were so error-ridden that they violated her procedural due process

and entitles her to further process, such as another bond hearing or release. The Court concludes she is not entitled to further process.

**First *Mathews* factor: Petitioner's interest.**

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (finding that freedom from detention is "the most elemental of liberty interests"). However, Petitioner has already received the procedures authorized by Congress, a bond hearing under § 1226(a) where an immigration judge concluded she was a flight risk.

**Second *Mathews* factor: Risk of erroneous deprivation and the value of additional safeguards.**

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Here, Petitioner asserts that there is a risk of erroneous deprivation of her liberty interest because her bond hearings or decisions were error-ridden. Petitioner also asserts that there is a risk of erroneous deprivation because evidence suggests she is neither a flight risk nor a danger.

As explained below, Petitioner has not demonstrated that her latest bond hearing in August 2026 was so error ridden as to create a risk of erroneous deprivation of her liberty interest. Whether the Court would make the same detention decision is not at issue in this case. Petitioner already received the fundamental features of due process—notice and an opportunity to be heard. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (citations omitted)). Moreover, a bond hearing under § 1226(a) is generally a sufficient process to mitigate the risk of erroneous deprivation. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022).

Petitioner assert that the immigration court's bond decision violated due process because (1) the immigration court erroneously found that it lacked jurisdiction; (2) the immigration court failed to call witnesses; (3) the Government's evidence was erroneous; and (4) the immigration court failed to adequately analyze the *Guerra* factors. Doc. 1 at 12.

However, some of these alleged errors were fixed by the August 12, 2026 bond hearing. Petitioner asserts that her prior bond hearings were flawed because they were based on incorrect evidence. She asserts that the Government introduced evidence at prior bond hearings that she missed eight appointments with ICE. She disputed this evidence at her prior bond hearings. On or about August 6, 2026, the Government revised its Form I-213 to remove the alleged missed appointments. A custody redetermination hearing was held on or about August 12, 2026. The immigration judge appears to have accepted Petitioner's proffer regarding the changed circumstances and corrected Form I-213. *See* Doc. 1-2 at 174-76. Therefore, it appears that Respondents corrected the erroneous Form I-213 and she received a bond hearing at which the immigration judge acknowledged the change in the evidence. *See* Doc. 1-2 at 176. The immigration court's bond decision on August 12, 2026 was no longer based on erroneous evidence in the prior Form I-213.

Moreover, in August 2026 the immigration judge held a hearing under § 1226(a), concluded that Petitioner was a flight risk, and did not rule that Petitioner was mandatorily detained. Therefore, the immigration judge did not erroneously conclude that Petitioner was mandatorily detained.

Petitioner asserts that the immigration judge erred by failing to "call witnesses." Doc. 1 at 12. But the immigration judge stated that he read the evidence filed on the docket and considered

counsel's proffer and arguments. *See* Doc. 1-2 at 170-78, Exhibit N.[1] At the hearing, Petitioner did not alert or tell the judge that there was other evidence Petitioner wished to present. And Petitioner did not explain why her counsel's proffer of the evidence to the immigration judge was constitutionally insufficient. Here, the transcript of the bond hearing does not reflect that Petitioner requested to present witness testimony and the immigration judge denied her request. Petitioner has not cited to any authority that an immigration judge's reliance on evidence filed in the record and counsel's proffer, without any request by a petitioner to present witness testimony, is constitutionally insufficient. Notably, Petitioner fails to cite to any authority that an immigration judge is required to "call witnesses" when counsel or parties do not request at the hearing that any be called.

Next, Petitioner asserts that her due process rights were violated because the immigration judge failed to fully analyze the *Guerra* factors. Petitioner does not cite to any law that an immigration judge is required to mechanically recite and address all *Guerra* factors. At the bond hearing, the immigration judge must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). The immigration judge may also consider various discretionary factors, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

[1] Although the cover page for Exhibit N references November 14, 2025, Doc. 1-2 at 170, Petitioner asserts that this was an error and Exhibit N is the transcript for the August 2026 bond hearing. *See* doc. 1 at 4 n.1. The Court agrees with Petitioner. From context, it is clear that Exhibit N is the transcript for the August 2026 bond hearing.

> prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The immigration judge has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* at 40. The burden is on the detainee to demonstrate that release on bond is warranted. *Id.* The BIA case law following *Guerra* has either broadened these factors or taken an expansive view of these factors, allowing the immigration judge to consider whether a detainee has a valid or credible sponsor and the immigration status of a sponsor. *See Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 213 (BIA 2025); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 807 (BIA 2020). An immigration judge may also consider a detainee's immigration status and the likelihood that any application for relief will be granted. *Matter of R-A-V-P-*, 27 I. & N. Dec. at 807 (allowing immigration judge to consider a detainee's immigration status and likelihood that an application for relief, such as application for asylum, will be approved).

Here, the immigration judge based his bond decision on factors allowed under BIA case law. The immigration judge stated that he found she was a flight risk based on her manner of entry into the country and the fact that she was ordered removed. Doc. 1-2 at 176-77. The Government explained that she was a flight risk because she entered without inspection, at an unknown date and time around 2023, which was "relatively recent." Doc. 1-2 at 176. As explained above, these are permissible factors to consider, and Petitioner does not cite to any authority that an immigration judge is required to mechanically analyze each *Guerra* factor. And the fact that one might come to a different flight risk determination does not mean that a due process violation occurred.

In sum, Petitioner received a bond hearing under § 1226(a) in August 2026 in which the erroneous Form I-213 was not introduced. Petitioner has not demonstrated that there were errors in her bond hearing, or that such errors created an erroneous deprivation of her liberty interest.

**<u>Third *Mathews* factor: Government's Interest</u>**

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Here, Petitioner does not fully analyze the third factor. The significant weight afforded to the executive and legislature over immigration matters renders the third *Mathews* factor favorable to Respondents. Respondents also have a strong interest in detention while the removal proceedings are pending. *Miranda v. Garland*, 34 F.4th 338, 364-65 (4th Cir. 2022). Removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States*, 163 U.S. 228 (1896). Thus, the Respondents' interest here is strong.

Balancing the *Mathews* factors, the Court concludes that Petitioner is not entitled to additional process. As explained above, Petitioner has not demonstrated a risk of erroneous deprivation of her liberty interest at her bond hearing. Moreover, she did not account for the Respondents' substantial interest in detention pending removal proceedings.

## II. Petitioner has not demonstrated a substantive due process violation.

Petitioner also asserts a substantive due process violation. She appears to assert that there is no justification for her detention because the immigration court's errors show it is unable to provide a fair and impartial custody redetermination hearing. *See* Doc. 1 at 14.

Petitioner has substantive due process rights. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive ... due process guarantees of the Fifth Amendment."). Respondents may violate a noncitizen's substantive due process rights if immigration detention becomes punitive. *Id.* Nevertheless, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (examining pretrial detention). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) a legitimate nonpunitive governmental purpose may not be rationally assigned to the restriction or the restriction is excessive in relation to that purpose. *Id.* at 747; *see also Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1442 (5th Cir.) (applying rationality test to immigration detention), *amended,* 997 F.2d 1122 (5th Cir. 1993); *see also Kingsley v. Hendrickson,* 576 U.S. 389, 398, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015) (as to due process excessive force claim, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not

rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.”).

Notably, Petitioner does not argue or explain why she is entitled to heightened scrutiny as opposed to rational-basis review. *See, e.g., Gonzalez Aguilar v. McAleenan*, No. 19-CV-0412 WJ/SMV, 2019 WL 5864821, at *10 (D.N.M. Nov. 8, 2019) (explaining that petitioner failed to argue or explain why heightened basis scrutiny applied), *report and recommendation adopted sub nom. Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202 (D.N.M. 2020). She has therefore failed to carry her burden on this point. In the alternative, the Court need not decide this issue. Whether rational basis review or heightened scrutiny applies, her substantive due process claim fails.[2]

“[S]ince *Mathews,* this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.” *Demore v. Kim*, 538 U.S. 510, 522 (2003). Detention pending removal proceedings “is a constitutionally permissible part of the process.” *Demore*, 538 U.S. at 531. Detention pending a removal decision “necessarily serves the purpose of preventing deportable [ ] aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.” *Demore,* 538 U.S. at 528 (considering mandatory detention under §1226(c)). By its nature, detention under § 1226 is definite—its “obvious termination point” is the entry of a final removal order. *Zadvydas*, 533 U.S. at 697. Due process requires that the duration

[2] Although the Tenth Circuit applied a heightened scrutiny in *Hoang,* that decision was vacated. *See Hoang v. Comfort*, 282 F.3d 1247, 1257 (10th Cir. 2002) (“However, even if a restriction was not meant to be punishment and a non-punitive purpose may be rationally assigned to it, the restriction may still constitute punishment if it imposes conditions so excessive in relation to the assigned purpose as to be considered punitive rather than regulatory.”), *cert. granted, judgment vacated sub nom. Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003).

of detention bear "a reasonable relation to the purpose for which the individual was committed." *Zadvydas*, 533 U.S. at 690 (cleaned up).

In an unpublished decision, the Tenth Circuit held that a noncitizen detained for more than three years pending a decision on removal proceedings under § 1226(a) was not entitled to relief for indefinite detention under *Zadvydas*. *See Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012). It reasoned that the end of his detention remained reasonably forseeable because he was detained pending a decision on whether he was to be removed from the United States, and there was nothing in the record to suggest that the petitioner was unremovable. *Id.* Similarly, in a published case the Tenth Circuit rejected the application of *Zadvydas* to a petitioner who had a removal order with an appeal pending, explaining as follows:

> But for now, his detention is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas;* it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point, and, thus, is more akin to detention during the administrative review process, which was upheld in *Demore v. Kim,* 538 U.S. 510, 527–29, 531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

*Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004).

Here, Petitioner appears to assert that her detention does not bear a "reasonable relation to [the] purposes" of civil immigration detention and therefore violates substantive due process. Doc. 1 at 13. She appears to suggest that her bond hearing was so error-ridden that there is an insufficient basis to detain her. As explained above, Petitioner is detained pending a decision on her removal. A removal order was issued, and she appealed the removal order. Petitioner received a bond hearing under § 1226(a) in August 2026, at which an immigration judge found she was a flight risk. As explained above, the Court finds that Petitioner's assertions of error at the August 2026 bond hearing are not well-taken. Therefore, Petitioner's detention is not punitive, a non-

punitive purpose may be rationally assigned to it, and her detention is not excessive in relation to its purpose. Based on the arguments and record before the Court, the Court finds that Petitioner has not demonstrated a substantive due process violation.[3]

**III. <u>Petitioner's APA claims are not well-taken</u>.**

To the extent Petitioner challenges her detention through an APA claim, it fails. The APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687-88). In a concurring opinion, Justice Kavanaugh explained that "claims under the APA are not available when there is another 'adequate remedy in a court,' ...." *Trump v. J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring). He further explained that "habeas corpus, not the APA, is the proper vehicle here." *Id.* Because the relief Petitioner seeks is attainable through habeas corpus, the APA does not supply a cause of action here.

**IT IS THEREFORE ORDERED** that Petitioner's Petition is hereby **DENIED.**

____________/S/_______________________
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

---

[3] In the alternative, assuming heightened scrutiny applies and the Court must address heightened scrutiny without briefing, the Government has a compelling interest in ensuring attendance by removable noncitizens in removal proceedings. And here, the restriction is narrowly tailored as Petitioner received a bond hearing at which an immigration judge concluded that she was a flight risk. Petitioner was ordered removed. While the removal order was appealed, it suggests she may be removable.